1  Barbara Quinn Smith (Ohio Bar 0055328)
   (Pro Hac Vice)
2  MADDOX HARGETT & CARUSO, P.C.
   9930 Johnnycake Ridge Road
3  Suite 3F
   Mentor, OH  44060
4  Telephone: (440) 354-4010
   Facsimile: (440) 848-8175
5  bqsmith@mhclaw.com

6  Attorneys for Named Plaintiff and the Putative Class

7             UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                SAN FRANCISCO DIVISION

10 JOY YOSHIOKA, on behalf of herself and    )  Case No. CV 11 1625 EMC
   all others similarly situated,            )
11                                           )  **NOTICE OF MOTION AND MOTION FOR**
                 Plaintiff,                  )  **FINAL APPROVAL OF PROPOSED CLASS**
12      vs.                                  )  **ACTION SETTLEMENT; MEMORANDUM**
                                             )  **IN SUPPORT OF MOTION**
13 THE CHARLES SCHWAB                        )
   CORPORATION, SCHWAB HOLDINGS,             )  Date:      December 13, 2011
14 INC. AND CHARLES SCHWAB & CO.,            )  Time:      3:30 PM
   INC.,                                     )  Courtroom: 5
15                                           )  Judge:     Hon. Edward M. Chen
                 Defendants.                 )
16                                           )
                                             )
17 _____ )

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  INTRODUCTION ........................................................................................................ 1

3  ARGUMENT OF LAW ............................................................................................... 2

4  I. THE SETTLEMENT PROVIDES A REAL, TANGIBLE AND VALUABLE
  BENEFIT TO MEMBERS OF THE CLASS ................................................ 2

5

6  II. OBJECTIONS.................................................................................................. 5

7    A. The Settlement "Corrects" The Prohibited Transaction And Thus IRS
   And/Or Department of Labor Involvement Is Unnecessary. ................................. 5

8    B. No Basis Exists For An Award Of Monetary Compensation To The Class........... 8

9    C. A Release Is A Necessary Component Of Any Settlement ................................. 8

10   D. Individual Objectors........................................................................................ 8

11    1. Mark Noblett (Doc. # 51)................................................................... 9

12    2. Victor Gauquier (Doc. # 52 and 95) ................................................... 9

13    3. Michael T. McDonnell (Doc. #53) ..................................................... 9

14    4. John C. Nagel (Doc. #54) ................................................................... 9

15    5. Douglas A. Guyette (Doc. #55) .......................................................... 9

16    6. Henry Powell (Doc. #56) .................................................................. 10

17    7. Roger J. Bernstein and Nicole A. Gordon (Doc. #57)............................ 10

18    8. Frank Matthews (Doc. #58) .............................................................. 10

19    9. Robert Wildin (Doc. #59) ................................................................. 10

20    10. George E. Toskey (Doc. #60) ............................................................ 11

21    11. Angela Real (Doc. #61) ..................................................................... 11

22    12. Charles Belmer (Doc. #63) ................................................................ 11

23    13. Peter Barry (Doc. #64) ...................................................................... 11

24    14. Alan Roth and Geraldine Kurz (Doc. #65) ......................................... 11

25    15. Gregory H. Shipman (Doc. #67)........................................................ 11

26    16. Charles Daniel Martens (Doc. #71) ................................................... 12

27    17. Christian Hague (Doc. #72) ............................................................... 12

28    18. Helen Luger and Don Donaldson (Doc #73) ....................................... 12

19.    Eric G. Peterson (Doc #74) ...................................................... 12

20.    William H.T. Frey (Doc #75) .................................................. 12

21.    Richard E. Gruskin (Doc #76) ................................................ 12

22.    Thomas J. Roycraft (Doc #77) ................................................ 12

23.    Gehl Davis (Doc. No. 78) ....................................................... 12

24.    Richard H. Krohn (Doc #79) .................................................. 13

25.    Jack D. Flesher (Doc #80) ...................................................... 13

26.    Brian Posewitz (Doc #81) ....................................................... 13

27.    Bruce Van Voorhis (Doc #82) ................................................ 14

28.    John F. Jerow (Doc. #84) ........................................................ 14

29.    Gregory Garmong (Doc. #86-88) ........................................... 14

30.    Tamara Klindt (Doc #88) ....................................................... 14

31.    Glenn Drury (Doc. #89) .......................................................... 14

32.    Lawrence Schonbrun (Doc #90) ............................................. 14

33.    John H. Kinner and Ling Shen (Doc. #91) ............................. 18

34.    William Cunningham (Doc #92) ............................................ 18

35.    Kurt Hafner ............................................................................. 18

III.    The Standards For Judicial Approval Of Class Action Settlements ................................. 18

        A.    The Settlement Meets The Ninth Circuit Standard For Approval ........................ 20

              1.    The Settlement Is The Result of Arms-Length Negotiations Between The Parties. ................................. 20

              2.    The Settlement Is Fair, Adequate and Reasonable ................................... 21

IV.    THE SETTLEMENT PROVIDED ADEQUATE NOTICE TO THE CLASS ............... 24

V.    CERTIFICATION OF THE CLASS IS PROPER ........................................................ 25

CONCLUSION ................................................................................................................ 25

### TABLE OF AUTHORITIES

**Cases**

*Aebig v. Cox*, 2006 Mich. App. LEXIS 1695 (Mich. Ct. App. May 18, 2006) .............................. 4

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal.1979) ........................................................ 23

*Estate of Letts v. Commissioner*, 109 T.C. 290 (1997) ............................................................... 3

*FCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232 (10th Cir. 2009) . 18

*Gesell v. Commonwealth Edison Co.*, 216 F.R.D. 616 (C.D. Ill. 2003) ....................................... 13

*Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)............... 24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................ 20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337 (C.D.
Cal. June 10, 1992) ...................................................................................................................... 23

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................ 24

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................................. 19

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007)............................ 19, 20, 23

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ......... 19

*In Re: Stephen S. Meredith,* 2005 Bankr. LEXIS 2798 (E.D. Va. 2005)( ..................................... 3

*Lemon v. International Union Operating Eng'rs Local* 139, 216 F.3d 577 (7th Cir. 2000)......... 13

*Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234 (9th Cir. 1998).............................................. 23

*Lundell v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) ........................... 21

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................... 23

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972).......................................................................... 23

*Nu-Way Energy Corporation v. Delp*, 205 S.W.3d 667, 683 (Tx. App 2006) .............................. 3

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................... 19, 20

*Principe v. Ukropina (In re Pacific Enters. Sec. Litig.),* 47 F.3d 373 (9th Cir. Cal. 1995).......... 24

*Rodriguez v. West Pub.* Corp., 563 F.3d 948 (9th Cir. 2009) ....................................................... 9

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................. 19

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ................................................. 19

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................. 20

*Woo v. Home Loan Group, L.P.*, 2008 U.S. Dist. LEXIS 65144 (S.D. Cal. Aug. 25, 2008) . 19, 20

*Zabolotny v. Commissioner*, 97 T.C. 385 (T.C. 1991)...................................................................7

**Statutes**

    11 U.S.C. § 522...............................................................................................................3

    26 U.S.C. §4975(f)(5) ....................................................................................................7

    26 U.S.C. 4975(d)(23) ....................................................................................................6

    26 U.S.C. 4975(f)(11)(A).................................................................................................7

    26 U.S.C. 4975(f)(11)(B)(ii)............................................................................................7

**Rules**

    Fed. R. Civ. P. 23 …………………………………………………………….. passim

**Treatises**

    4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008) ..... 19

# INTRODUCTION

Named Plaintiff respectfully submits for final approval a settlement ("Settlement") with Defendants The Charles Schwab Corporation, Schwab Holdings, Inc., and Charles Schwab & Co., Inc., (collectively, "Schwab") that fully resolves the claims asserted in Named Plaintiff's Complaint.

This class action arises from language in certain Schwab account agreements which purports to create a lien on the non IRA assets of Schwab IRA owners, for the benefit of their IRA. Plaintiff Joy Yoshioka filed this action on behalf of herself and all others similarly situated on April 4, 2011 alleging claims for violations of the California Unfair Competition Law, violation of the California Consumer Legal Remedies Act, breach of contract, and breach of fiduciary duty. In addition, the Named Plaintiff requested declaratory relief, in the form of a declaration specifying the parties' rights and obligations under the account agreements.

In June, 2011, the parties engaged in mediation before Randall W. Wulff of the Oakland mediation firm Wulff, Quinby & Sochynsky. Through that mediation, the parties were able to reach an agreement on the key terms of the settlement. Declaration of Ryan K. Bakhtiari In Support of Named Plaintiffs Motion for Preliminary Approval of Class Action Settlement ("Bakhtiari Dec.") at ¶5. In the following weeks, after the substantive terms of the settlement had been reached and the original Stipulation of Settlement executed, the parties arrived at a negotiated agreement on attorneys' fees and expenses and an incentive award for Named Plaintiff Joy Yoshioka. *Id.* at ¶ 6.

The Settlement is an excellent result for the Class. As discussed below, in reaching the Settlement, the Named Plaintiff and her counsel considered the numerous risks of continued litigation, and believe that the relief the Settlement provides to the Class outweigh the risks of continued and protracted litigation in which the result was inherently uncertain.

On September 8, 2011, the Court issued an Order Preliminarily Approving Class Action Settlement (the "Preliminary Approval Order") (Doc. #44). As part of that Order, a class was

preliminarily certified, consisting of all persons who currently hold or formerly held a Schwab

IRA account at any time from January I, 2005 to the date of Final Judgment.

Pursuant to the Preliminary Approval Order, the Revised Notice was mailed to members

of the Settlement Class who are current Schwab account holders in a regularly scheduled

delivery by Schwab (e.g. with account holders' statements, amendments and other notices from

Schwab) and was sent to the last electronic or mailing address known to Schwab for former

Schwab account holders who are Members of the Settlement Class.  *See* Declaration of Mary

Anne Thompson (Doc. #68) at ¶ 3.  Pursuant to the Preliminary Approval Order, Class Members

who wished to file objections to the Settlement must have postmarked their objection no later

than November 18, 2011.  Thirty-one valid objections have been received, an exceedingly small

number given the number of accounts at issue.

ARGUMENT OF LAW

**I.     THE SETTLEMENT PROVIDES A REAL, TANGIBLE AND VALUABLE
        BENEFIT TO MEMBERS OF THE CLASS**

Before addressing the individual objections, Named Plaintiff wishes to note that the

settlement reached by the parties provides a real, tangible and valuable benefit to the Settlement

Class Members.  Many of the objectors have focused on the threat of tax liabilities resulting from

the challenged language, and while that is a very valid concern, it is not the most imminent threat

to Settlement Class Members.  Named Plaintiff believes that the more realistic harm that is

avoided because of this settlement is the protection of these accounts from creditors.

For a variety of reasons, the IRS has little incentive, even absent the settlement, to engage

in a wholesale campaign to tax IRA accounts which would otherwise be exempt from taxation

had their owners not inadvertently engaged in a prohibited transaction.  Aside from the general

unpopularity of that action, the IRS would be required to recognize that early distributions taken

from those IRAs, distributions which likely have already been subject to early withdrawal penalties and tax, were not subject to either. [1]

The larger problem, and the reason that this settlement is so critically important to Class Members, is that once a prohibited transaction occurs, and the account loses its status as a tax exempt retirement account, the assets in the account are then subject to attachment in bankruptcy, and garnishment in connection with civil judgments.

The bankruptcy laws exempt certain properly from the debtor's estate, including "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522.  Several states follow the federal bankruptcy exemptions in determining what property is exempt from attachment or garnishment by creditors.  Once that exemption is lost due to a prohibited transaction, the assets held by the IRA become fair game for creditors.

It is not an exaggeration to say that this settlement is designed to prevent an impending disaster.  It is not uncommon for a creditor to successfully request attachment or garnishment of an IRA based upon the claim that the IRA owner engaged in a prohibited transaction under § 4975.  *See, e.g., In Re: Stephen S. Meredith,* 2005 Bankr. LEXIS 2798 (E.D. Va. 2005)(finding that an IRA belonging to a debtor who used its assets in a prohibited transaction lost its character as exempt property and became part of the bankruptcy estate); *Nu-Way Energy Corporation v. Delp,* 205 S.W.3d 667, 683 (Tx. App 2006)(When a  debtor's "IRA no longer qualifies as an

---

[1] Action on the part of the IRS in this instance would violate what is termed the "duty of consistency".  The duty of consistency is an affirmative defense that prevents a party, usually the taxpayer, from taking a tax position with respect to a tax year and then taking a contrary position in a subsequent year. The three elements of duty of consistency are: (1) a party makes a representation for tax purposes; (2) the other party acquiesces to the representation and relies on it; and (3) the first party changes the representation in a later year after the statute of limitations bars an adjustment to the initial year. *Estate of Letts v. Commissioner*, 109 T.C. 290 (1997).

individual retirement account under the Internal Revenue Code [due to a prohibited transaction, it is no longer exempt from creditors" under state law); *Plummer v. Prairie State Bank*, 1989 U.S. Dist. LEXIS 14311 (D. Kan. Nov. 13, 1989)(same); *Aebig v. Cox*, 2006 Mich. App. LEXIS 1695 (Mich. Ct. App. May 18, 2006)(same).

Bankruptcy trustees and even brokerage firms are increasingly using the exact language at issue here to attach assets to pay debts – assets which are meant to be shielded for good reason.   Examples include:

- In the Eastern District of Tennessee, Debtor James Daley filed for voluntary protection under the bankruptcy code.  Mr. Daley filed a list of exemptions and included his Individual Retirement Account held with Merrill Lynch, which contained $61,646.00. The bankruptcy trustee subsequently objected to the claimed exemption of the Merrill Lynch IRA from the bankruptcy estate and argued that the debtor engaged in a prohibited transaction, causing the IRA to lose its tax exempt status.  The Trustee argued that because the Merrill Lynch Client Relationship Agreement contained the lien provision, which is substantially similar to the lien provisions in the present case, the IRA engaged in a prohibited transaction and was improperly claimed as exempt from the bankruptcy estate.  The court held in the Trustee's favor and stated, "[t]his grant of a lien at the IRA's inception constituted an extension of credit or guarantee, which is a prohibited transaction under 26 U.S.C. § 4975(c)(1)(B). As incongruous as it appears, based upon the language of the Client Relationship Agreement signed by the Debtor, the mere opening of the Merrill Lynch IRA caused the Debtor to participate in a prohibited transaction under § 4975." *In Re James L. Daley, Jr., Debtor*, United States Bankruptcy Court for the Eastern District of Tennessee, Case No. 10-34110. (attached as Exhibit A to the Declaration of Barbara Quinn Smith ("Smith Dec."))

- In *In re Saul Kaminsky*, Mr. Kaminsky, the debtor, had two accounts with Merrill Lynch, a regular brokerage firm account and an IRA.  Merrill Lynch extended a $30,000 overdraft loan to the debtor for checks written out of the regular brokerage firm account.

- 4 -

When Merrill Lynch was unable to collect on the overdraft loan from the regular brokerage firm account, it placed a hold on the assets in Mr. Kaminsky's IRA and filed an arbitration action against Mr. Kaminsky.  After the arbitrator held for Merrill Lynch and ordered Mr. Kaminsky pay $18,297.56, Mr. Kaminsky filed for bankruptcy.  In the bankruptcy proceeding, Merrill Lynch argued that the debtor's IRA was not exempt from the bankruptcy estate because a security interest in the IRA was created by the lien language contained in the Client Relationship Agreement.  *In Re Saul Kaminsky, Debtor,* United States Bankruptcy Court for the Eastern District of New York, Case No. 1-09-47942-jbr.  (attached as Exhibit B to Smith Dec.)

The threat that individuals may lose their retirement savings because of provisions like the ones challenged here is very real.  Through this settlement, that threat has been allayed.

## II.   OBJECTIONS

In any class action, objectors may run the gamut from those who are sincere in their concerns about the settlement, to those who are simply looking to blackmail the parties into paying them to stop their interference with the settlement.  In this case, we have received a number of well thought out objections from class members who are clearly invested in the outcome of the settlement.  Unfortunately, it appears there are also objections from individuals whose motives may not be as clear.  There are common themes amongst many of the objections, and Named Plaintiff will address those common issues before addressing each objection individually.

### A.   The Settlement "Corrects" The Prohibited Transaction And Thus IRS And/Or Department of Labor Involvement Is Unnecessary.

Several objectors have raised concerns as to whether the settlement will prevent the IRS and/or the Department of Labor from asserting that, notwithstanding the settlement, a prohibited transaction did in fact occur.  Counsel believes that any action on the part of those agencies would be unsuccessful because the settlement "corrects" the prohibited transaction as described

by 26 U.S.C. 4975(d)(23). That statute provides a mechanism to reverse a prohibited transaction entered into inadvertently.[2]

_____

[2] Relevant portions of §4975 are as follows:

**(c) Prohibited transaction.**

  (1) General rule. For purposes of this section, the term "prohibited transaction" means any direct or indirect--
    (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
    (B) lending of money or other extension of credit between a plan and a disqualified person;
    (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
    (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
    (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
    (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

(**d**) **Exemptions.** Except as provided in subsection (f)(6), the prohibitions provided in subsection (c) shall not apply to--

(23) except as provided in subsection (f)(11), a transaction described in subparagraph (A), (B), (C), or (D) of subsection (c)(1) in connection with the acquisition, holding, or disposition of any security or commodity, if the transaction is corrected before the end of the correction period.

**(f) (11) Correction period.**
    (A) In general. For purposes of subsection (d)(23), the term "correction period" means the 14-day period beginning on the date on which the disqualified person discovers, or reasonably should have discovered, that the transaction would (without regard to this paragraph and subsection (d)(23)) constitute a prohibited transaction.
    (B) Exceptions.
      (i) Employer securities. Subsection (d)(23) does not apply to any transaction between a plan and a plan sponsor or its affiliates that involves the acquisition or sale of an employer security (as defined in section 407(d)(1) of the Employee Retirement Income Security Act of 1974 [29 USCS § 1107(d)(1)]) or the acquisition, sale, or lease of employer real property (as defined in section 407(d)(2) of such Act [29 USCS § 1107(d)(2)]).
      (ii) Knowing prohibited transaction. In the case of any disqualified person, subsection (d)(23) does not apply to a transaction if, at the time the transaction is entered into, the disqualified person knew (or reasonably should have known) that the transaction would (without regard to this paragraph) constitute a prohibited transaction.
    (C) Abatement of tax where there is a correction. If a transaction is not treated as a prohibited transaction by reason of subsection (d)(23), then no tax under subsections (a) and (b) shall be assessed with respect to such transaction, and if assessed the assessment shall be abated, and if collected shall be credited or refunded as an overpayment.
    (D) Definitions. For purposes of this paragraph and subsection (d)(23)--
      (i) Security. The term "security" has the meaning given such term by section 475(c)(2) [26 USCS § 475(c)(2)] (without regard to subparagraph (F)(iii) and the last sentence thereof).
      (ii) Commodity. The term "commodity" has the meaning given such term by section 475(e)(2) [26 USCS § 475(e)(2)] (without regard to subparagraph (D)(iii) thereof).
      (iii) Correct. The term "correct" means, with respect to a transaction--
        (I) to undo the transaction to the extent possible and in any case to make good to the plan

In order to correct a prohibited transaction, the taxpayer must (1) have been unaware that the transaction constituted a prohibited transaction at the time it was entered into (26 U.S.C. 4975(f)(11)(B)(ii)), and (2) have corrected the transaction, to the extent possible, within the 14 day period beginning when the taxpayer learns of the prohibited transaction. (26 U.S.C. 4975(f)(11)(A)).  The statute defines a correction as "undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." 26 U.S.C. §4975(f)(5).

In this instance, there is no reason to believe that any class member knew, or should have known, that entering into the account agreement resulted in a prohibited transaction.  Because this action was filed as a class action, each Member of the putative class may be considered to have taken steps to undo the lien provisions through the parties' settlement agreement.  The Settlement Agreement was entered before any Class Member had actual knowledge that the account agreement provisions resulted in a prohibited transaction.  That knowledge was certainly gained through the Notice, and the amendments to the account agreements took effect at the same time Notice was received. Thus the fourteen day provision is satisfied.  Schwab's retroactive amendment of the account agreements, coupled with the Court's declaration that the lien provisions were void *ab initio*, constitute a correction of the transaction.  "The statute and the regulations look first to rescission of the transaction where possible." *Zabolotny v. Commissioner*, 97 T.C. 385, 399 (T.C. 1991).  Based upon Schwab's representations that the lien provisions have not been invoked against any class member, there are no losses in any IRA as a result of the challenged provision, and thus no need for any class member to reimburse his or her IRA. The transaction is corrected through the settlement.  Regulatory authorities thus have no basis for claiming that the accounts are taxable.

---

or affected account any losses resulting from the transaction, and
     (II) to restore to the plan or affected account any profits made through the use of assets of the plan.

### B.    No Basis Exists For An Award Of Monetary Compensation To The Class

Some Objectors have expressed displeasure with the fact that no monetary compensation will be given to the Class.  However, as explained in Named Plaintiffs' Supplemental Briefing in Support of Her Motion for Preliminary Approval of Class Action Settlement (Doc. # 39), Named Plaintiff thoroughly investigated the possibility of monetary relief for the class, and concluded that class members did not realize monetary damages as a result of the presence of the disputed language in the account agreement.  This conclusion was based upon a number of facts that were associated with the specific language found in Schwab's documentation, Schwab's representation that no IRA account has been treated as distributed as a result of its contract, and upon other factors that are unique to the way in which Schwab operates as a firm and manages its customer IRA accounts, including, but not limited to, that Schwab does not charge annual fees for administration of those accounts.  *See,* Declaration of T. John Kirk, ¶ 3 attached as Exhibit A to the Supplemental Brief (Doc. 39-1).  Under these circumstances, the likelihood of obtaining monetary damages where no monetary injury has occurred is extremely unlikely.

### C.    A Release Is A Necessary Component Of Any Settlement

Some Objectors have questioned why they must release Schwab from further liability related to the challenged contractual provisions.  The fact is that this was a contested proceeding and Schwab firmly believes that the challenged language does not result in a prohibited transaction.  The release is a necessary component of compromise, without which this litigation could not have been settled.

### D.    Individual Objectors

Named Plaintiff wishes to assure the Court that each objection has been reviewed and given careful consideration.  Each is addressed individually below; however, where the objection concerns one of the issues addressed above (i.e, governmental approval, damages, or the release), Named Plaintiff simply notes the subject of the objection without further commentary.

### 1.    Mark Noblett (Doc. # 51)

Mr. Noblett objects to the settlement on two grounds – (1) he does not believe that the settlement benefits anyone in the class; and (2) he believes the class should receive monetary compensation. With respect to the former, Mr. Noblett does not offer any specific facts that would contradict the notion that the settlement will avoid both adverse tax consequences and unexpected garnishment or attachment of Class Members' IRA assets.

### 2.    Victor Gauquier (Doc. # 52 and 95)

Mr. Gauquier is not a class member, and thus has no standing to object.  Declaration of Mila Dunn re Non-Class Member Objections at ¶ 3.

### 3.    Michael T. McDonnell (Doc. #53)

Mr. McDonnell's objection is based on the lack of any assurance from the IRS that no tax will be forthcoming as a result of the disputed contract provisions, or, if said assurance does exist, he objects to the award of fees because the existence of the described assurance would render this litigation meaningless.

### 4.    John C. Nagel (Doc. #54)

Mr. Nagel objects to the settlement because he is not receiving the same incentive fee that has been requested for the Named Plaintiff.  Mr. Nagel's objection misapprehends the nature of the incentive fee.  Incentive awards are not compensation for damages incurred by the Named Plaintiff, but rather are used to compensate Named Plaintiffs "for work done on behalf of the class and in consideration of the risk undertaken in bringing the action."  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Mr. Nagel also states that he does not wish to release his right to sue.

### 5.    Douglas A. Guyette (Doc. #55)

Mr. Guyette objects to the settlement because he believes that the settlement does not provide any benefit to Class Members.  As outlined above, Mr. Guyette's position is not borne out by the facts.

1

### 6.    Henry Powell (Doc. #56)

Mr. Powell's letter cannot be construed as an objection to the settlement.  It appears that he is simply confirming his status as a Class Member.  Apparently, however, he is not a member of the class. Declaration of Mila Dunn re Non-Class Member Objections at ¶ 3.

### 7.    Roger J. Bernstein and Nicole A. Gordon (Doc. #57)

Mr. Bernstein and Ms. Gordon raise the following issues in their objection:

- Named Plaintiff has not secured an IRS revenue ruling approving the retroactive amendment to the account agreements;

- The release is not in the interest of class members when the tax consequences of the amendment remain unknown, and class members should not be required to release damage claims where no damages are being awarded.

- Class Members are not given the opportunity to opt out.

Mr. Bernstein's and Ms. Gordon's final point – that class members should be given the opportunity to opt-out - is based upon their belief that class members have current claims for damages.  As explained above, this is an incorrect assumption.

### 8.    Frank Matthews (Doc. #58)

Dr. Matthews objects to the amount of fees requested by Named Plaintiff's counsel.  The basis for Counsel's fee request is set forth in the memorandum in support of that request, and counsel continues to believe that the fees requested are reasonable given the amount of work performed.

### 9.    Robert Wildin (Doc. #59)

Mr. Wildin objects to providing a release in exchange for what he believes is a settlement which provides him with no benefit.  In addition, he believes that the class is too broadly defined because, in his words, it includes members who were not "in a situation to be harmed."  This statement indicates a misunderstanding of the nature of the issues before the Court.

### 10.    George E. Toskey (Doc. #60)

Mr. Toskey objects to the settlement because he believes that the change to the account agreements is meaningless.  As outlined above, the amendment serves to correct the prohibited transaction created by the lien provisions and cannot be described as meaningless.

### 11.    Angela Real (Doc. #61)

Ms. Real does not appear to object to the settlement; rather, her correspondence sets forth a description of issues unrelated to the current settlement that Ms. Real has had with Schwab.

### 12.    Charles Belmer (Doc. #63)

Mr. Belmer objects to the release, fearing that he may incur tax liabilities in the future and be unable to pursue Schwab for damages.  As discussed above, Named Plaintiff believes that this concern is unfounded.

### 13.    Peter Barry (Doc. #64)

Mr. Barry objects to the fees requested by Counsel.  This objection is of particular concern not because of its substance, but because Mr. Barry represents in his objection that he is "admitted to the United States District Court for the Northern District of California".  Named Plaintiff's counsel has verified with the Clerk of this Court that Mr. Barry is not a member of the bar of this Court.  Smith Dec. at ¶ 3.  Moreover, Mr. Barry is not a class member, and thus has no standing to object.  Declaration of Mila Dunn re Non-Class Member Objections at ¶ 3.

### 14.    Alan Roth and Geraldine Kurz (Doc. #65)

Mr. Roth's and Ms. Kurz's objection is based upon (1) their belief that the settlement will not protect them from subsequent action by the IRS or the Department of Labor and (2) their desire not to release Schwab from liability in the event that there is subsequent action by one of those agencies.

### 15.    Gregory H. Shipman (Doc. #67)

Mr. Shipmans' objection is not to the merits of the present litigation but rather to class actions in general.  The issues he raises are not relevant to the present settlement.

**16.     Charles Daniel Martens (Doc. #71)**

Mr. Martens objects to the settlement because he believes that he and other class members remain subject to future actions by the IRS.

**17.     Christian Hague (Doc. #72)**

Mr. Hague's objection is also based upon his concerns of future actions by the IRS, and upon the terms of the release.

**18.     Helen Luger and Don Donaldson (Doc #73)**

Ms. Luger and Mr. Donaldson object to the terms of the release.

**19.     Eric G. Peterson (Doc #74)**

Mr. Peterson's objection is based upon his belief that the settlement will result in financial harm to Defendant Schwab.  This concern is not a valid basis for setting aside a settlement and is belied by the fact that Schwab entered into the settlement voluntarily.

**20.     William H.T. Frey (Doc #75)**

Mr. Frey's objection is based upon his concerns of future action by the IRS and the terms of the release.

**21.     Richard E. Gruskin (Doc #76)**

Mr. Gruskin's objection is also based upon his concerns of future action by the IRS and the terms of the release.  Mr. Gruskin also believes that the Class should receive monetary compensation.

**22.     Thomas J. Roycraft (Doc #77)**

Mr. Roycraft objects to the settlement apparently because his accounts at Schwab have suffered significant losses.  That is, of course, not a valid basis upon which to challenge this settlement.

**23.     Gehl Davis (Doc. No. 78)**

Mr. Davis objects to the fees requested because he believes those costs will ultimately be passed on to Schwab's customers.   This is not a valid basis for determining the amount of any fee award.

24.    **Richard H. Krohn (Doc #79)**

Mr. Krohn's objection is also based upon his concerns of future action by the IRS and the terms of the release

25.    **Jack D. Flesher (Doc #80)**

The basis for Mr. Flesher's objection is his belief that (1) the disputed language in the account agreements does not lead to a prohibited transaction; (2) the Named Plaintiff has not incurred any monetary damages; and (3) The IRS has found Schwab's custodial account acceptable for IRAs, and would not have approved it had language in the account agreement resulted in a prohibited transaction.

While Mr. Flesher's comments are appreciated, those comments (which mirror the defenses asserted by Defendants in this action), even if accepted as true, are not sufficient to prevent a settlement of Named Plaintiffs' claims.

26.    **Brian Posewitz (Doc #81)**

Mr. Posewitz objects to (1) not having the option to opt out of the settlement (2) the scope of the release; and (3) attorney fees.

With respect to the first issue, "[if a class is certified under Rule 23(b)(2), there is no option for class members to opt out of the class, on the presumption that because the plaintiffs seek class-wide injunctive relief, the interests of class members are "cohesive and homogeneous." *Lemon v. International Union Operating Eng'rs Local* 139, 216 F.3d 577, 580 (7th Cir. 2000). "Such an opt out option exists for a class certified under Rule 23(b)(3), in part because a suit for money damages, 'jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim,' even if the plaintiffs also seek class-wide injunctive relief." *Gesell v. Commonwealth Edison Co.,* 216 F.R.D. 616, 626 (C.D. Ill. 2003). Although the Court does have discretion to permit opt-outs from a class certified under (b)(2), in this instance, each member of the class stands in exactly the same position – each benefits from the relief obtained in the settlement in the exact same way.

### 27.   Bruce Van Voorhis (Doc #82)

Mr. Van Voorhis' concerns are based upon the possibility of future actions by the IRS and upon the scope of the release.

### 28.   John F. Jerow (Doc. #84)

Mr. Jerow's objection seems to be based on a misunderstanding of the nature of Named Plaintiff's claim.  His question as to how any plaintiff would know if a transaction occurred **in their account** which led to the loss of tax exempt status indicates that Mr. Jerow may be under the impression that specific account activity gives rise to the problem, rather than the account agreement itself.

Mr. Jerow also objects to the incentive award requested on behalf of the Named Plaintiff. As the Court is aware, such awards are routinely requested in class litigation, and are in no way evidence of collusion between the parties.

Mr. Jerow asserts that the requested attorney fees are excessive given his belief that Schwab would have eventually amended the account agreements.  That assertion is unwarranted given Schwab's position in this litigation.

### 29.   Gregory Garmong (Doc. #86-88)

The merits of Mr. Garmong's objection are addressed by Named Plaintiff in her opposition to his Motion to Intervene.

### 30.   Tamara Klindt (Doc #88)

Ms. Klindt's objection is simply that the lawsuit is "frivolous."  Without more, her objection is unsubstantiated.

### 31.   Glenn Drury (Doc. #89)

Mr. Drury believes the settlement is ineffective absent governmental approval.

### 32.   Lawrence Schonbrun (Doc. #90)

Mr. Schonbrun is a professional objector.  A very recent opinion from the Southern District of Florida bears repeating, as it will serve as a preview of what may be expected from Mr. Schonbrun in this litigation:

1  [A] professional objectors['] … sole purpose is to obtain a fee by objecting to

2  whatever aspects of the Settlement they can latch onto. The Court agrees with

3  the court in *Barnes v. Fleet Boston Fin. Corp*., 2006 U.S. Dist. LEXIS 71072,

4  at *3-4 (D. Mass. Aug. 22, 2006), that, "[P]rofessional objectors can levy

5  what is effectively a tax on class action settlements, a tax that has no benefit to

6  anyone other than to the objectors. Literally nothing is gained from the cost:

7  Settlements are not restructured and the class, on whose benefit the appeal is

8  purportedly raised, gains nothing." See also *In re UnitedHealth Group PSLRA*

9  *Litig*., 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009); *O'Keefe v. Mercedes-*

10  *Benz USA*, LLC, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); *Snell v. Allianz*

11  *Life Ins*. Co. of N. Am., 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at

12  *9 (D. Minn. Sept. 8, 2000); *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp.

13  2d 942, 975 (E.D. Tex. 2000). As Professor Issacharoff explained, "[t]he

14  unfortunate game is to lodge pro forma objections at the trial stage, then

15  negotiate a private resolution in order to drop the invariable notice of appeal.

16  Once the case has progressed beyond the trial court, there is no longer any

17  accountability for side payments to objectors' counsel, and the game is on."

18  Decl. of Prof.   Samuel Issacharoff [DE # 1885-7], ¶ 33. The Court has

19  nonetheless considered their objections on the merits, and rejects them for the

20  reasons set forth herein. Should these or any other Objectors choose to persist

21  in their objections in order to tie up the execution of this Settlement and

22  further delay payment to the members of the Settlement Class, the Court will

23  consider additional measures to make sure that the members of the Settlement

24  Class are not further harmed as a result. See Supplemental Decl. of Prof. Brian

25  T. Fitzpatrick [DE # 1885-7], ¶¶ 11-13 (discussing "objector blackmail" and

26  observing that courts have fought back by sanctioning professional objectors

27  and requiring hefty appeal bonds). And, as Judge Gold noted in the *Allapattah*

28  case, an Objector seeking a fee "for simply filing a claim when Class Counsel

has done all the work" will "[a]t the end of the day . . . have to appear before

this Court to justify his fees." See *Allapattah Servs., Inc. v. Exxon Corp.,* 454

F. Supp. 2d 1185, 1191 (S.D. Fla. 2006).

*Torres v. Bank of Am. (In re Checking Account)*, 2011 U.S. Dist. LEXIS 135014, 117-119 (S.D.

Fla. Nov. 22, 2011).  Judge Scheindlin, writing in a case in which Mr. Schonbrun appeared as

counsel for an objector, was succinct:  "I concur with the numerous courts that have recognized

that professional objectors undermine the administration of justice by disrupting settlement in the

hopes of extorting a greater share of the settlement for themselves and their clients."  *In re Initial*

*Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010).

In this instance, Mr. Schonbrun appears as a class member, rather than as counsel for an

objector.  The Tenth Circuit Court of Appeals previously held that in so doing, Mr. Schonbrun

may not obtain monetary compensation for his objection;  *FCW Local 880-Retail Food v.*

*Newmont Mining Corp*., 352 Fed. Appx. 232, 237 (10th Cir. 2009).

Named Plaintiff responds as follows to the substance of that objection:

1.  Mr. Schonbrun believes the settlement to be inadequate because it does not compensate

him for monetary losses that may occur in his accounts.

2.  Mr. Schonbrun believes Named Plaintiff to be an inadequate representative of class

members who no longer hold accounts at Schwab.   This contention is addressed below at

§V.

3.  Mr. Schonbrun finds the Notice inadequate because it does not provide information about

what damages may be available to class members so that they may properly evaluate the

settlement.   However, as Counsel has pointed out, because of the circumstances here

existing, monetary damages were unavailable to members of the class.   None of the

statutes under which this complaint was brought provide for statutory damages.

4.  Mr. Schonbrun asserts that the settlement has "indicia of structural collusion".  However,

the "indicia" to which he refers are common aspects of any similar settlement.   The

court's cautions in *Staton v. Boeing Co.*, 327 F.3d 938, 963-64(9th Cir. 2003) regarding

"implicit collusion" were meant as a reminder to district courts to carefully scrutinize fee

awards to insure that they are not so high as to have tempted counsel to abandon the

interests of the class.  In this instance, Named Plaintiff has submitted detailed time

records for the Court's review.  Equally important is the fact that the settlement was

negotiated and agreed to before any fees were discussed.  Moreover, it bears repeating

that no class member has as of yet incurred economic damages as a result of the

challenged provisions.  Mr. Schonbrun's suggestion that fees should not be paid when

equitable relief is the only appropriate relief cannot be countenanced.

5.  Mr. Schonbrun's objections to the Notice are without merit.

- The use of the word "may" in the sentence "You may have held a Schwab IRA account" is not misleading under any reasonable construction.

- The fact that **under certain circumstances** an objector's counsel may be awarded attorney fees does not make the notice instruction that class members may obtain counsel at their own expense misleading.   It simply informs them of their right to independent counsel.

- The language in the notice concerning fees is completely accurate. Fees paid do not in any way diminish the relief available to the Class.

6.  Mr. Schonbrun's issues with Counsel's fee request are addressed in the supplement fee

brief.

7.  Mr. Schonbrun believes that if the full amount of fees requested by counsel are not

awarded, the unawarded portion should revert to the Class.   Counsel vigorously

disagrees, because doing so creates a conflict between counsel and the Class, one that

counsel took great pains to eliminate by negotiating fees only after reaching agreement

on the relief to the Class.  The scheme which Mr. Schonbrun proposes may have been

utilized in the "common fund" settlements that have become increasingly unpopular, but

makes no sense here.  Moreover, as noted above, the *Staton* court does not prohibit this

quite common provision, but rather cautions district courts to ensure that the fees are

reasonable.

8.  Mr. Schonbrun takes issue with the requirement that Objectors include their account number in their objection.   This requirement is necessary in order to verify whether the Objector was in fact a class member.  Nothing prevented the redaction of the account number from a publicly filed document.

9.  Mr. Schonbrun objects to the fact that Objectors were required to mail their objections in time to be received by the Court no later than November 18, 2011.  There is nothing about that requirement that is burdensome, particularly because Class Members had ample notice of the deadline.

10.  Mr. Schonbrun's final objection is that the pre-suit demand mandated by the California Legal Remedies Act ("CLRA") is not publicly available.  There is no reason for that demand letter to be publicly available, as it is not part of the pleadings in this matter.  Named Plaintiff's allegation that it was sent is sufficient for purposes of the CLRA.

### 33.  John H. Kinner and Ling Shen (Doc. #91)

Mr. Kinner's and Ms. Shen's objection to the settlement is simply that they "are not pleased" with the settlement.  This is an insufficient basis to disprove the settlement.

### 34.  William Cunningham (Doc. #92)

Mr. Cunningham objects to the fact that class members do not receive a de minimus cash payment.  As discussed above, it is Counsel's opinion that the class would not be able to obtain monetary damages.

### 35.  Kurt Hafner

Mr. Hafner appears to object to the content of the Notice, believing it should contain additional information to enable class members to accept or reject the settlement.  Named Plaintiff believes the Revised Notice provided sufficient information to Class Members.

## III.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits.  *Officers for*

1   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982);  *Torrisi v. Tucson Elec. Power*

2   *Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.,* 559 F. Supp. 2d

3   1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy

4   favoring settlement, particularly in class action law suits.").  Class actions readily lend

5   themselves to compromise because of the difficulties of proof, the uncertainties of the outcome,

6   and the typical length of the litigation.  It is beyond question that "there is an overriding public

7   interest in settling and quieting litigation," and this is "particularly true in class action suits."

8   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  "In most situations, unless

9   the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

10  expensive litigation with uncertain results."  4 A. Conte & H. Newberg, *Newberg on Class*

11  *Actions*, § 11:50 (4th ed. West 2008).

12          Under Fed. R. Civ. P. 23(e), a class action may be settled upon notice of the proposed

13  settlement to class members, and a court finding, after a hearing, that the settlement is fair,

14  reasonable and adequate. *See also Woo v. Home Loan Group, L.P.*, 2008 U.S. Dist. LEXIS

15  65144 (S.D. Cal. Aug. 25, 2008).  On a motion for approval of a class action settlement, "the

16  Court must determine whether the interests of the class will be better served by resolution of the

17  litigation than by continuation of it."  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*,

18  720 F. Supp. 1379, 1387 (D. Ariz. 1989).

19          The Court's role in settlement approval is essentially twofold, determining whether the

20  settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate. *Officers*

21  *for Justice*, 688 F.2d at 625.  In exercising its discretion to approve the settlement of a class

22  action, a district court should consider the following factors: (1) "the strength of the plaintiff's

23  case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk

24  of maintaining a class action throughout the trial"; (4) "the amount offered in settlement"; (5)

25  "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and

26  views of counsel"; and (7) "the reaction of the class members to the proposed settlement." *In re*

27  *Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)); *see also Omnivision,* 559 F.

Supp.2d at 1041; *Woo,* 2008 U.S. Dist. LEXIS 65144 (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  In exercising its sound discretion, a district court should not adjudicate the merits of the case.  As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice,* 688 F.2d at 625 (emphasis added); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)("in order to avoid a trial, the judge must [not] in effect conduct one"). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations presided over by an experienced mediator. *See* Bakhtiari Dec. at ¶ 4-6.  It is the considered judgment of Class Counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval. *Id.* at ¶2.

A.     **The Settlement Meets The Ninth Circuit Standard For Approval**

1.     **The Settlement Is The Result of Arms-Length Negotiations Between The Parties.**

In June, 2011, the parties engaged in mediation before Randall W. Wulff of the Oakland mediation firm Wulff, Quinby & Sochynsky.  Through that mediation, the parties were able to reach an agreement on the key terms of the settlement.  Bakhtiari  Dec. ¶ 5.  In the following

weeks, after the substantive terms of the settlement had been reached and the original Stipulation of Settlement executed, the parties arrived at a negotiated agreement on attorneys' fees and expenses and an incentive award for Named Plaintiff Joy Yoshioka.  *Id* at ¶ 6.

Counsel spent a great deal of time investigating this matter prior to filing, so that by the time settlement discussions began, Class Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and was able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Schwab has been represented by experienced counsel from a prominent law firm with substantial experience in this type of litigation.  Schwab's counsel was no less rigorous in its representation of Schwab than Class Counsel's representation of the Class.

As a result, the parties' settlement negotiations were both informed and hard-fought. The negotiations consisted of not only a formal mediation session – conducted under the direction of a well-regarded mediator with extensive experience in the mediation of complex actions – but also negotiations over several weeks following the mediation session.*See* Bakhtiari Dec. at ¶ 5-6.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties.  *See Lundell v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

## 2.    The Settlement Is Fair, Adequate and Reasonable

Analysis of the factors enumerated in *Mego Fin. Corp.* leads to the conclusion that the Settlement is in fact fair, adequate and reasonable.

### a.    The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

If the litigation had continued, Named Plaintiff faced substantial risks, including demonstrating, over Schwab's vigorous opposition, that the challenged language created a

prohibited transaction, and, if successful on that front, establishing Schwab's liability for including that language in its account agreements.

If Counsel has done its job, the true benefits of this settlement will never be known. That is because this action was designed as a preventative measure – to prevent the IRS from taxing otherwise non-taxable retirement accounts, and more realistically, to prevent creditors from taking those assets in bankruptcy or collection.  There can be no doubt that is it in the best interest of Class Members to guard against those outcomes sooner rather than later.

If this Settlement had not been achieved, the action would likely have continued for years and the ultimate result of further litigation cannot be foreseen.  Instead of the lengthy, costly, and uncertain course of further litigation, the Settlement provides an immediate and certain resolution for the Class.  The Settlement clearly outweighs the substantial risks associated with lengthy continued litigation.

### b.      The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *See Mego Fin.*, 213 F.3d at 459. Counsel believes that the settlement terms compare favorably to the risks associated with continued litigation. Undoubtedly, this case settled more quickly than does a typical class action. That fact is not a negative for several reasons.  The parties' respective positions were ultimately legal positions that would have been resolved by the Court as a matter of law, with very little discovery into the merits of the claims needed.  This, coupled with the exigencies of the situation, and the fact that the benefits obtained for the class represent the best outcome that could have been obtained at trial, weigh heavily in favor of approving the settlement.

Counsel's opinion remains that the Settlement is in the best interests of the Class and that the Settlement is fair, reasonable, and adequate.  This conclusion is based on, among other things, the risk, time and expense in continuing to prosecute the case; the significant

uncertainties in predicting the outcome of this complex litigation; and the substantial risks to which the Class would remain exposed absent a settlement.

### c.     The Amount Obtained In Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In fact, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.  *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted)).

As noted above, in this instance, Counsel firmly believes that the relief obtained in the settlement is the best outcome that could have been received at trial.  As we've indicated, it is unlikely that monetary damages would have been awarded, given Schwab's representation that no IRA has been subject to tax as a result of the contract language, and the fact that Schwab does not charge for the administration of its IRA accounts.

### d.     The Experience And Views Of Class Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.  *See, e.g.*, *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *see also Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd*, 485 F. Supp. at 622). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS

13555 (C.D. Cal. June 10, 2005)(citations omitted); *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007), *aff'd,* 331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Principe v. Ukropina (In re Pacific Enters. Sec. Litig.),* 47 F.3d 373, 378 (9th Cir. Cal. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555 (internal citation omitted).  Here, the parties actively litigated this case for over two years.  Class Counsel has many years of experience in class actions throughout the country, and in assessing the relevant merits of each side's case.  Based on that experience and our work in this case, Class Counsel recommends that the Court approve the Settlement.

>           **e.          Reaction Of The Class Members To The Proposed Settlement**

The reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy.  Indeed, courts have explained that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Omnivision,* 559 F. Supp. 2d at 1043  (citation omitted).

Notices were sent to holders of approximately 5,032,256  accounts[3]. From that population, 31 valid objections were received.  Class Counsel is appreciative that many of the objectors provided thoughtful and well considered commentary on the settlement, but the fact remains that 31 objections is an infinitesimally small number given the millions of individuals in the class.  The favorable reaction of the Class further supports approval of the Settlement.

## IV.    THE SETTLEMENT PROVIDED ADEQUATE NOTICE TO THE CLASS

As required by the Court's Preliminary Approval Order, the Revised Notice was mailed to members of the Settlement Class who are current Schwab account holders in a regularly

---

[3] Counsel for Schwab has confirmed this number in correspondence to Class Counsel.

scheduled delivery by Schwab (e.g. with account holders' statements, amendments and other notices from Schwab) and was sent to the last electronic or mailing address known to Schwab for former Schwab account holders who are Members of the Settlement Class.  *See* Declaration of Mary Anne Thompson (Doc. #68) at ¶ 3.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

## V.    CERTIFICATION OF THE CLASS IS PROPER

In preliminarily approving the settlement, the Court found that it was proper to provisionally certify a class based on findings that the requirements of Fed. R. Civ. P. 23(a) and (b)(2) were satisfied.  The facts underlying those findings have not changed since the entry of that Order.

Objector Lawrence Schonbrun challenges the adequacy of the Named Plaintiff to represent former account holders.  Adequacy demands that "representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).  There is absolutely no basis for believing that current account holders, like Named Plaintiff, are differently situated than former account holders, or that the interests of the two are not identical.  The requirements of Rule 23 remain satisfied, and the class should be certified.

**CONCLUSION**

For all of the reasons stated herein, Named Plaintiff respectfully requests that the Court issue an Order certifying the class and approving the Settlement, in the form of the Order submitted contemporaneously herewith.

Dated: November 29, 2011  Respectfully submitted,

      __/s/Barbara Quinn Smith____
      Barbara Quinn Smith

      Ryan Bakhtiari (SBN 199147)
      rbakhtiari@aol.com
      **AIDIKOFF, UHL & BAKHTIARI**
      9454 Wilshire Boulevard, Suite 303
      Beverly Hills, CA 90212
      Telephone:  (310) 274-0666
      Telecopier:  (310) 859-0513

      Thomas K. Caldwell
      tkcaldwell@mhclaw.com (Pro Hac Vice to be filed)
      T. John Kirk
      kirktjohn@mhclaw.com (Pro Hac Vice to be filed)
      **MADDOX HARGETT & CARUSO, P.C.**
      10100 Lantern Rd.
      Suite 150
      Fishers, IN 46037
      Telephone: (317) 598-2040
      Telecopier: (317) 598-2050

      Tim Berry
      tim@iraideas.com
      **TIM BERRY P.C.**
      11812 E. Toledo
      Gilbert, AZ 85295
      Telephone:  (602) 652-2875

      *Attorneys for Plaintiff and the Proposed Class*